UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                                        Case No.: 8-15-75534-AST
                                                              Chapter 7
Samuel Osuji,


                         Debtor(s).
--------------------------------------------------------X

### ORDER GRANTING RELIEF
### FROM THE AUTOMATIC STAY
### AND OVERULING OBJECTION TO CLAIM

Currently pending before the Court are: Samuel Osuji's ("Debtor") motion objecting to a

proof of claim (the "Claim Objection") filed in his bankruptcy case by MTGLQ Investors, L.P.,

successor in interest to JPMorgan Chase Bank, N.A. ("MTGLQ"), relating to property located at

95 Angevine Avenue, Hempstead, NY 11550 (the "Property"); and MTGLQ's motion for relief

from the automatic stay as it relates to the Property (the "MFRS" and together the "Motions").

For the reasons herein, MTGLQ's MFRS is granted and Debtor's Claim Objection is overruled.

***The bankruptcy case and proof of claim***

On December 30, 2015, Debtor filed a voluntary petition for relief under chapter 7 of title

11 of the United States Code (the "Bankruptcy Code").  In his petition, Debtor lists his residence

as the Property.  Kenneth Kirschenbaum was appointed the chapter 7 trustee (the "Trustee").

On January 13, 2016, Debtor filed bankruptcy schedules, including Schedule A/B,

asserting, *inter alia*, a fee simple ownership interest in the Property.  [dkt item 9]

On October 27, 2016, the Trustee filed a status report and stated, among other things, that

he did not intend to administer any interest of this bankruptcy estate in the Property.  [dkt item

40]

On November 30, 2016, MTGLQ filed a secured proof of claim against Debtor's

bankruptcy estate asserting a claim in the amount of $364,863.86 secured by the Property (the

"Claim"). [Proof of Claim #2-1]  In support of the Claim, MTGLQ attached a note (the "Note")

in the original amount of $296,000.00 in favor of JPMorgan Chase Bank, N.A. ("JPMorgan"),

and a mortgage (the "Mortgage") that secures the Note and encumbers the Property, both dated

December 31, 2004; both purport to be signed by Debtor's former spouse Christine Phillips-

Osuji ("Mrs. Osuji"), with the Mortgage being notarized.  The Note attached to the Claim is

endorsed in blank by JPMorgan.  Additionally, MTGLQ attached an assignment of mortgage

from JPMorgan to MTGLQ dated February 2, 2016 signed by a representative of MTGLQ as

attorney in fact of JPMorgan.

The Property, Note, and Mortgage have been the subject of ample state and federal court

litigation by Debtor.

***Jurisdiction and venue***

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§

157(b)(2)(A), (B), (G), and 1334(b), and the Standing Orders of Reference in effect in the

Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but

made effective *nunc pro tunc* as of June 23, 2011.

***Findings of fact and conclusions of law***

This decision constitutes the Court's findings of fact and conclusions of law as required

by Rule 7052 and Rule 9014(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

***The state court proceedings and transfer of title***

Prior to Debtor's bankruptcy petition, on or about June 17, 2011, JPMorgan commenced

a foreclosure proceeding against Mrs. Osuji in the Supreme Court of the State of New York,

Nassau County, bearing index number 091211/2011, stemming from her default on the Note (the

"Foreclosure Action"). An answer and a motion seeking to strike the complaint were filed

2

purportedly on behalf of Mrs. Osuji and Debtor "as 'John DOE' #1 and parties in interest;" however, Mrs. Osuji later filed an affidavit in the Foreclosure Action averring that the answer and motion to strike were filed without her knowledge or permission. The state court denied the relief requested in the motion to strike, following which Debtor made several efforts to intervene in and stay the Foreclosure Action; that relief was ultimately denied by the state court, which denial was affirmed by the Appellate Division, Second Department. *See JP Morgan Chase Bank, N.A. v. Osuji*, 120 A.D.3d 1194, 991 N.Y.S.2d 895 (App. Div. 2d Dept. 2014). On October 30, 2015, based on Mrs. Osuji's consent to entry of a Judgment of Foreclosure and Sale, the state court granted JPMorgan's motion for an Order of Reference in the Foreclosure Action.[1] [adv. pro. no.: 16-08039; dkt item 1]

On November 5, 2015, Debtor acting on behalf of himself and instead of Mrs. Osuji, purportedly incident to a power granted to him in his divorce action, conveyed the Property to himself by way of bargain and sale deed (the "Deed").[2] Debtor filed this bankruptcy case before the Foreclosure Action resulted in a foreclosure sale.

### The adversary proceeding[3]

On March 17, 2016, Debtor commenced an adversary proceeding (the "Adversary") against Federal National Mortgage Association ("Fannie Mae") and JPMorgan (collectively, the "Defendants") by the filing of a complaint (the "Complaint"), assigned adversary proceeding

---

[1] The state court granted JPMorgan's motion for an Order of Reference pursuant to New York Real Property Actions and Proceedings Law § 1321, which provides that "If the defendant fails to answer within the time allowed or the right of the plaintiff is admitted by the answer, upon motion of the plaintiff, the court shall ascertain and determine the amount due, or direct a referee to compute the amount due to the plaintiff and to such of the defendants as are prior incumbrancers of the mortgaged premises,…"

[2] The deed was recorded with Nassau County Clerk's Office on January 30, 2017.

[3] The Court assumes familiarity with the facts and procedural history, which are referenced only as necessary to explain the Court's Order.

number 8-16-08039.  In the Complaint, Debtor alleges, *inter alia*, that the Defendants are not the holders of the Note and Mortgage that encumber the Property.

On April 20, 2016, MTGLQ, which was not a named defendant in the Adversary, filed an answer and counterclaim for stay relief as to the Property,[4] alleging it was the assignee of the Note and Mortgage referenced in the Complaint. [adv. pro. no.: 16-08039; dkt item 13]

On May 26, 2016, Defendants filed a motion to dismiss the Adversary essentially arguing that the claims asserted by Debtor are barred by *res judicata* and the *Rooker-Feldman* doctrine (the "Motion to Dismiss").[5]  [adv. pro. no.: 16-08039; dkt item 25]

On July 26, 2016, the Court issued an *Order to Show Cause as to Why the Court Should Not Abstain from Hearing this Adversary Proceeding* (the "OSC").[6]  [adv. pro. no.: 16-08039; dkt item 36]

On September 2, 2016, the Court entered an *Order to Abstain from Adversary Proceeding and, in the alternative, to Dismiss Adversary Proceeding* (the "Order to Abstain"). [adv. pro. no.: 16-08039; dkt item 41]

On September 8, 2016, Debtor filed his Notice of Appeal to District Court. [adv. pro. no.: 16-08039; dkt item 42]

On July 17, 2017, the District Court entered its *Memorandum and Order*, affirming this Court's Order to Abstain and concluding that this Court did not abuse its discretion in permissively abstaining from the Adversary.[7]  [adv. pro. no.: 16-08039; dkt item 52]; *Osuji v.*

---

[4] On August 15, 2016, the Court held a hearing, at which the Court directed MTGLQ to seek any relief from the automatic stay through Debtor's main bankruptcy case.

[5] The parties filed various opposition and support of the Motion to Dismiss.

[6] The parties filed various opposition and support of the OSC.

[7] The District Court did not address this Court alternative ruling on the Motion to Dismiss.

*Fannie Mae (In re Osuji)*, No. 16-CV-5018 (JFB), 2017 U.S. Dist. LEXIS 110682 (E.D.N.Y. July 17, 2017).

**The claim objection and motion for relief from stay**

On December 22, 2016, while the appeal of the Order to Abstain was pending, Debtor filed his Claim Objection [dkt item 50], in which he asserts, among other things, that 1) MTGLQ's claims are stale; 2) the statute of limitations expired before the state court action was dismissed or disposed; 3) that Fannie Mae was the owner of the Note and Mortgage and JPMorgan never obtained rights to the Note and Mortgage that it could transfer to MTGLQ; 4) MTGLQ is not a party in interest and lacks standing to file a proof of claim; 5) the assignment of the Mortgage from JPMorgan to MTGLQ is defective; and 6) MTGLQ does not have standing as a secured creditor.

On January 12, 2017, MTGLQ filed a response to the Claim Objection (the "Response"), asserting, among other things, that a state court foreclosure action affecting the Property is pending and that MTGLQ is in possession of the Note and Mortgage. [dkt item 54]

On January 18, 2017, MTGLQ filed its MFRS. [dkt item 55]

On January 23, 2017, Debtor filed a reply to the Response, asserting, among other things, that the state court action was disposed of on October 30, 2015, MTGLQ is not the holder of the Note and Mortgage, and that MTGLQ's assignment of mortgage executed during Debtor's bankruptcy case is defective and cannot confer standing on MTGLQ. [dkt item 56]

On February 8, 2017, Debtor filed a motion to extend time to respond to the MFRS (the "Motion to Extend Time"). [dkt item 59]

On February 9, 2017, MTGLQ filed a supplemental exhibit to the MFRS asserting, among other things, that Mrs. Osuji has not made a payment pursuant to the Note or Mortgage since August 1, 2010. [dkt item 60]

On February 13, 2017, MTGLQ filed an affirmation in opposition to Debtor's Motion to Extend Time. [dkt item 63]

On February 14, 2017, Debtor filed an affirmation in further support of his Motion to Extend Time. [dkt item 64]

On February 16, 2017, the Court held a hearing on the Claim Objection and MFRS (the "Hearing"), at which MTGLQ appeared by counsel; Debtor appeared along with counsel. At the Hearing, the Court stated it was treating Debtor's Claim Objection as an objection to MTGLQ's MFRS. At the Hearing Counsel for MTGLQ produced the alleged original Note with a restrictive endorsement to MTGLQ and the original Mortgage; the Court allowed the parties to inspect the Note and Mortgage at the conclusion of the Hearing. Additionally, the Court directed that within 14 days MTGLQ file an affidavit of 1) a person with personal knowledge of the original endorsement of the Note in blank and his/her authority to make such an endorsement; and 2) an affidavit of a person with personal knowledge of the restrictive endorsement of the Note to MTGLQ and his/her authority to make such an endorsement. The Court directed that within 14 days after MTGLQ filed its affidavit(s), Debtor may file any challenge to the authenticity of the Note.

On March 2, 2017, MTGLQ filed an affirmation of its Counsel stating that, among other things, it presented the original Note to the Court, and provided an affidavit of Evan L. Grageda, Vice President of JPMorgan (the "Grageda Affidavit").[8] [dkt item 66] Mr. Grageda attests that he has personal knowledge of the factual matters based upon his review of the business records of JPMorgan; that Fannie Mae was the prior investor in the loan and that JPMorgan was the servicer; that JPMorgan transferred all its right title and interest of the loan to MTGLQ as

---

[8] The Grageda Affidavit is the same affidavit that MTGLQ filed in the Adversary in support of its Motion to Dismiss. *See* adv. pro. no.: 16-08039; dkt item 25.

evidenced by the assignment of mortgage dated February 2, 2016; and that neither JPMorgan nor Fannie Mae have an ownership interest in the loan.

On March 3, 2017, MTGLQ filed an affidavit of James W. Moffett, Vice President of MTGLQ, dated March 2, 2017 (the "Moffett Affidavit"). [dkt item 67] Mr. Moffett attests that he has personal knowledge of the factual matters based on his review of MTGLQ's business records maintained in the ordinary course of business; that on December 17, 2015, the Note was delivered to MTGLQ; he attaches the Note with the blank endorsement signed by JPMorgan; that the endorsement on the Note was stamped with MTGLQ's name; and that MTGLQ is the owner and holder of the Note and Mortgage.

On March 16, 2017, Debtor filed an opposition to MTGLQ's MFRS. [dkt item 72] Debtor asserts the original Note was not surrendered to the Court pursuant to CPLR 3212 or CPLR 3215.[9] Additionally, Debtor provides a report of proposed expert witness Donald Frangipani, analyzing a photographed copy of the alleged original Note, in which he finds that "the photographed copy is consistent with a photocopied document and is inconsistent with the unsigned Note which shows no evidence of alterations, lines and not consistent with the original Note." Debtor submits an affidavit of Isaac Aregbesola, (the "Aregbesola Affidavit"), Vice President of N City Corp Builders, Inc., ("NCCB"), in which he attests that as of January 28, 2005, the loan was transferred to Fannie Mae REMIC Trust 2005-4 and on March 5, 2007, NCCB took physical possession of the Note. In support, Debtor attaches a copy of an alleged unendorsed note with an allonge to NCCB.

***Standing to seek stay relief***

---

[9] CPLR 3212 provides the rules specific to summary judgment motion practice in New York state courts. CPLR 3215 provides the rules for default judgment in New York state courts.

This Court in *In re Escobar* had previously determined what evidence a party seeking stay relief must bring forward to demonstrate an adequate interest in the property at issue for a bankruptcy court to consider granting relief from the stay:

> evidence necessary to establish standing to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage; however, standing should not require evidence which would be necessary to prevail over a claim objection or to prevail in an adversary proceeding asserting that the claimant does not hold a valid, perfected and enforceable lien.

457 B.R. 229, 235-39 (Bankr. E.D.N.Y. 2011); *In re Campora*, No. 14-CV-5066 JFB, 2015 WL 5178823, at *4 (E.D.N.Y. Sept. 3, 2015) (holding bankruptcy court did not abuse its discretion in finding secured creditor had standing to seek relief from stay where secured creditor had produced a copy of the original note, and demonstrated that it is the holder and owner of that note.)

Here, because this Court has already abstained from hearing the Adversary, it is not making the ultimate determination as to who has what rights in the Property and under the Note. Thus, the level of proof necessary to determine jurisprudential standing for stay relief is the standard espoused in *Escobar*. As noted, "granting or denying a stay relief motion is not and should not be considered a determination of the ultimate enforceability or unenforceability of the note and lien at issue." *Escobar*, 457 B.R. at 236.

Under New York law, a party has the right to enforce a mortgage "once a promissory note is tendered to and accepted by an assignee, [because] the mortgage passes as an incident to the note." *Id.* (citing *Mortgage Elec. Registration Sys., Inc. v. Coakley*, 41 A.D.3d 674, 838 N.Y.S.2d 622 (N.Y. 2007)). "Rights under a mortgage lien are beneficially transferred to the assignee of a promissory note, without the execution of a written assignment of the mortgage, and even without a written assignment of the mortgage." *Escobar*, 457 B.R. at 240. "An

8

endorsement in blank renders the note as bearer paper under the U.C.C. as enacted and in effect in New York, and negotiation of bearer paper is effectuated by delivery." *Id*.; 12 N.Y.U.C.C. Law §§ 3–302(1), 3–204(2).

Here, MTGLQ presented the original Note to the Court,[10] affirmation testimony that it is in physical possession of the original Note and that the Note has been endorsed to MTGLQ, and has thus demonstrated its jurisprudential standing. Debtor's evidence submitted to the Court is unconvincing that MTGLQ lacks standing to seek relief from the automatic stay to pursue its rights before the state court, which Debtor is free to challenge on the ultimate merits. Moreover, Debtor has failed to rebut the presumption of validity accorded to the MTGLQ Claim. Whether MTGLQ can ultimately prevail in the state Foreclosure Action and obtain a judgment of foreclosure is for the state courts to determine.

***Why cause exists under § 362(d)(1)***

Courts have broad discretion in granting stay relief. *In re Bennett Funding Group, Inc.*, 212 B.R. 206, 211 (2d Cir. 1997) (citing *Manhattan King David Restaurant, Inc. v. Levine*, 163 B.R. 36, 40 (S.D.N.Y. 1993)); *In re Fierro*, No. 1-14-41439-NHL, 2015 WL 3465753, at *4 (Bankr. E.D.N.Y. May 29, 2015). The automatic stay may be modified "for cause" pursuant to 11 U.S.C. § 362(d)(1). The movant bears the initial burden of showing "cause." *In re Mazzeo*, 167 F.3d 139, 142 (2d Cir. 1999); *Fierro*, 2015 WL 3465753, at *4. If a sufficient showing is made, the burden shifts to the debtor to demonstrate that there is insufficient "cause" to modify the stay. *In re Anton*, 145 B.R. 767, 769 (Bankr. E.D.N.Y. 1992); *Fierro*, 2015 WL 3465753, at *4.

---

[10] Debtor's has failed to establish how CPLR 3212 or CPLR 3215 apply here.

The Second Circuit has adopted a list of twelve factors (the "*Sonnax* Factors") to determine whether cause exists to lift the automatic stay to allow a stayed proceeding to continue in state court. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). They are:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

*See also Fierro*, 2015 WL 3465753, at *4.

A movant need not satisfy every one of the twelve factors. *Mazzeo*, 167 F.3d at 143; *In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y. 1994). The court should weigh the particular circumstances of each case to reach the solution that is most just to all parties. *In re Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

Application of the *Sonnax* Factors weighs in favor of granting relief from the automatic stay to allow the adjudication of the Debtor's and MTGLQ's claims. The Court in abstaining from the Adversary has already determined that

> (2) state law issues clearly predominate over bankruptcy issues; (4) there is a related state court foreclosure proceeding pending; (5) the lack of any jurisdictional basis other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (9) the burden on the court's docket; and (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties.

*In re Osuji*, 2017 U.S. Dist. LEXIS 110682, at *6.

To keep the stay in effect is inimical to the ability of the parties to receive a determination of who has what rights under the Note and in the Property. As this Court abstained in favor of the state court, clearly so that court could adjudicate the claims of Debtor and MTGLQ, Debtor's argument that the stay should not be lifted has no merit; were the stay to remain in effect, there would be no ability of the state court to adjudicate the very claims and assertions made by Debtor and by MTGLQ. Thus, cause clearly exists to grant stay relief.

In addition, neither the Note obligor nor Debtor have made payments on the Note in approximately seven years. These ongoing material defaults constitute a lack of adequate protection.

### *Why the claim objection should be denied*

While the standard of proof for stay relief is different than the standard of proof for a claim objection, here, MTGLQ's Claim as filed complies with the filing and documentary requirements of Federal Rule of Bankruptcy Procedure 3001 and Official Form B 410 and thus constitutes *prima facie* evidence of the validity and amount of the Claim, and Debtor has failed to overcome the presumption of validity afforded to the MTGLQ Claim. *See In re Taranto*, No. 10-76041-ast, 2012 Bankr. LEXIS 1320, at *18 (U.S. Bankr. E.D.N.Y. Mar. 27, 2012) ("The objecting party bears the burden of putting forth sufficient evidence to rebut the *prima facie* validity of the claim") (citing *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 540 (S.D.N.Y. 2001)) (citing *In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997), *aff'd*, 221 B.R. 692 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 846 (2d Cir. 1999)). The objector, must produce "evidence equal in force to the *prima facie* case which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, 2010 U.S. Dist. LEXIS 6500, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (internal citation and quotation marks omitted).

Debtor objects to MTGLQ's Claim pursuant to § 502(b)(1), under which this Court may disallow any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1). Debtor has failed to produce evidence in equal force to the *prima facie* case to refute at least one of the allegations that is essential to MTGLQ's Claim's legal sufficiency.

Even if Debtor rebutted the presumption of validity as to MTGLQ's Claim, MTGLQ has demonstrated that it is the proper party entitled to seek to enforce the Note and Mortgage. *See In re Adelphia Commc'ns Corp.*, 2007 Bankr. LEXIS 660, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) ("Once an objectant offers sufficient evidence to overcome the *prima facie* validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim"). As discussed above, this Court has already determined that MTGLQ has standing under New York state law to seek to enforce the Note and Mortgage.

Further, because this Court has abstained from hearing the Adversary, it will not otherwise adjudicate the merits of the Claim Objection. Again, the state court will determine the rights to the Property, and MTGLQ has not asserted that Debtor has personal liability on the Note. Debtor is not an obligor on the Note and did not personally assume Mrs. Osuji's liability on the Note. Debtor is purportedly the owner of the Property pursuant to the Deed, and MTGLQ's Claim is an *in rem* claim against any interest Debtor may have in the Property. *See Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S. Ct. 2150, 2154 (1991). Thus, in substance, the Claim Objection is redundant to the Adversary as MTGLQ would not be able to assert a deficiency claim against this estate.

Accordingly, it is hereby

**ORDERED**, that the automatic stay in effect, as it applies to the Property, pursuant to 11 U.S.C. § 362(a), is hereby terminated pursuant to 11 U.S.C. § 362(d)(1) for cause, including lack of adequate protection; and it is further

**ORDERED**, that the automatic stay is terminated as to MTGLQ, its agents, assigns or successors in interest, so that MTGLQ, its agents, assigns or successors in interest, may take any and all action under applicable state law to exercise its remedies against the Property; and it is further

**ORDERED**, that the Chapter 7 Trustee shall be served with a copy of the referee's report of sale within **thirty (30) days** of the report, if applicable, and shall be noticed with any surplus monies realized from the sale of the Property; and it is further

**ORDERED**, that the Claim Objection is overruled; and it is further

**ORDERED**, that all other relief sought in the MFRS and Debtor's Claim Objection is denied.



**Dated: October 6, 2017**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**