UNITED STATED BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                          Chapter 7

Samuel Osuji,                                                   Case No.: 15-75534-AST

                    Debtor.
------------------------------------------------------------x

## ORDER OVERULING
## DEBTOR'S OBJECTION TO PROOF OF CLAIM

On December 30, 2015, the above captioned debtor, Samuel Osuji (the "Debtor") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Kenneth Kirschenbaum was appointed the chapter 7 trustee (the "Trustee").

In the Debtor's bankruptcy petition, under Schedule F, Debtor lists two (2) debts owed to "National Student Loan", in the respective amounts of $1,599.00 and $1,501.00. Both of those debts were listed as "disputed." [Dkt. No. 9].

On October 28, 2016, the Trustee filed a Notice of Discovery of Assets and indicated a deadline of January 26, 2017 for proofs of claims to be filed. [Dkt. No. 41].

On November 21, 2016, Nebraska Student Loan Program, Inc. d/b/a National Student Loan Program ("Nebraska"), filed a proof of claim in the amount of $3,934.30 ("Nebraska POC"), as an unsecured claim arising from money loaned.

On December 6, 2016, Debtor filed a motion to object to POC-1 (the "Motion"), asserting, *inter alia*, that Nebraska is not a creditor of Debtor, it has not provided proof of the purchase or assignment of the underlying debt, the Debtor is exempt from the claim pursuant to his homestead exemption, and that Nebraska has not provided *prima facie* evidence that it is the holder of the original promissory note. [Dkt. No. 48].

On February 10, 2017, the Court entered an Order directing Nebraska to file its response to the Motion by no later than February 28, 2017, and allowing Debtor to file a reply within thirty (30) days thereafter, after which time the Motion would be on submission with the Court. [Dkt. No. 61].

On February 27, 2017, Nebraska filed an objection to the Motion (the "Objection"), asserting, *inter alia*, that it has provided the Court with *prima facie* evidence of the validity and amount of its claim. [Dkt. No. 65]. Nebraska filed an Affidavit of David Fuson, an employee of Nebraska, along with its Objection.

On March 23, 2017, Debtor filed a reply to Nebraska's Objection (the "Reply"), asserting, *inter alia*, that he has satisfied any amounts due to Nebraska and that the amount sought by Nebraska should be a claim by American Intercontinental University ("AIU") for Debtor's tuition, and that Nebraska lacks standing because it has not provided proof of the chain of the assignment of the debt. [Dkt. No. 76].

On January 23, 2018, the Court held a hearing on the Motion, at which Debtor and Counsel for Nebraska appeared. The Court provided Debtor with thirty days to submit a supplemental affidavit with evidence of payment and Nebraska with thirty days from Debtor's filing to submit a response, after which time the Motion would be on submission with the Court.

On February 21, 2018, Debtor's Counsel filed a declaration in response to Nebraska's Objection (the "Declaration"). [Dkt. No. 130]. Debtor's Counsel asserts that Debtor paid ACS in full and in support provided exhibits of Debtor's bank statements for intermittent months from May 2008 through February 2010 purporting to reflect payments to ACS. The bank statements provided reflect a total payment to ACS in the amount of $964.

On March 22, 2018, Nebraska filed a declaration of David Fusion in further opposition to Debtor's Motion. [Dkt. No. 131].

*The Loans*

Nebraska is a private nonprofit corporation organized under the laws of the state of Nebraska[1], and is a guarantor in the Federal Family Education Loan Program ("FFELP") and provides guaranty services pursuant to the Higher Education Act, including accepting transfer of title to certain student loan accounts from lenders when the student loan borrower is in default.[2]

On or about October 2004, Debtor executed a promissory note (the "Note") with the lender Educaid/Wachovia (the "Lender").[3]

On or about August 12, 2005, two Loans were distributed to Debtor (the "Loans"). Nebraska was the original guarantor of the Loans.[4]

On or about July 24, 2012, the servicer of the Loans, ACS Education Services ("ACS"), allegedly submitted a claim to Nebraska for payment under the Loans' guaranties because Debtor had defaulted on the Loans.[5]

The claim form that was allegedly submitted to Nebraska provides: "For value received the Lender/Holder hereby assigns all rights, title, and interest in the loan(s) listed in Section III of this form to the Guarantor, or its Successor."[6]

On September 19, 2012, Nebraska allegedly paid the Lender pursuant to the terms of the Loans' guaranties.[7]

---

[1] *See* Affidavit of David Fuson ("Fuson Affidavit), ¶ 2. [Dkt. No. 65-1].
[2] *See* Fuson Affidavit, ¶ 2.
[3] *See* Fuson Affidavit, ¶ 4.
[4] *See* Fuson Affidavit, ¶ 4.
[5] *See* Fuson Affidavit, ¶ 6.
[6] *See* Fuson Affidavit, ¶ 7, Exhibit B, Federal Family Education Loan Program Claim Form (the "Claim Form").
[7] *See* Fuson Affidavit, ¶ 8, Exhibit C, Nebraska Claims Paid Report (the "Claim Report").

As a result of Nebraska allegedly paying Debtor's defaulted loans, the Loans were allegedly transferred and assigned to Nebraska.[8]

Nebraska alleges it is the current holder in due course of the Loans and remains the guaranty agency of record.[9]

*Discussion*

"After the commencement of a bankruptcy case, a debtor's creditors are entitled to file a proof of claim documenting their right to receive payment from the debtor's estate." *In re Taranto*, No. 10-76041-ast, 2012 Bankr. LEXIS 1320, at *17 (U.S. Bankr. E.D.N.Y. Mar. 27, 2012) (citing *In re King*, 2010 Bankr. LEXIS 3830, 2010 WL 4290527, at *5 (Bankr. E.D.N.Y. Oct. 20, 2010)) (citing *In re Peterson*, 2009 Bankr. LEXIS 2099, 2009 WL 994945, at *4 (Bankr. N.D. Ill. Apr. 10, 2009)); *see Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 449, 127 S. Ct. 1199, 167 L. Ed. 2d 178, (2007)); *see also* 11 U.S.C. § 101(5)(A); FED. R. BANKR. P. 3003(c)(1). Once a proof of claim has been filed under 11 U.S.C. § 501, it "is deemed allowed, unless a party in interest objects." 11 U.S.C. § 502(a). "A proof of claim that complies with the filing and documentary requirements of Federal Rule of Bankruptcy Procedure 3001 and Official Form 10 'shall constitute *prima facie* evidence of the validity and amount of the claim." *Taranto*, 2012 Bankr. LEXIS 1320, at *17 (citing *King*, 2010 Bankr. LEXIS 3830, 2010 WL 4290527, at *5 (citing FED. R. BANKR. P. 3001(f))). The objecting party bears the burden of putting forth sufficient evidence to rebut the *prima facie* validity of the claim. *Taranto*, 2012 Bankr. LEXIS 1320, at *18 (citing *Primavera Familienstiftung v. Askin*, 130 F. Supp. 2d 450, 540 (S.D.N.Y. 2001)) (citing *In re St. Johnsbury Trucking Co.*, 206 B.R. 318, 323 (Bankr. S.D.N.Y. 1997)), *aff'd*, 221 B.R. 692 (S.D.N.Y. 1998), *aff'd*, 173 F.3d 846 (2d Cir. 1999). The ultimate burden of proof,

---

[8] *See* Fuson Affidavit, ¶ 9.
[9] *See* Fuson Affidavit, ¶ 9.

however, always lies with the claimant. *Primavera Familienstiftung*, 130 F. Supp. 2d at 540; *see generally Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S. Ct. 1951, 147 L. Ed. 2d 13 (2000). As established in *Raleigh*, bankruptcy courts should apply the burden of proof standards in the same manner as non-bankruptcy courts would apply the burden of proof standards under non-bankruptcy law, since the burden of proof is a substantive aspect of the claims allowance process. *Id.* at 20-21.

Just as a creditor has to have standing to file a claim, a party who objects to a claim must have standing to do so. In particular, for a chapter 7 debtor to object to a filed claim, the debtor must demonstrate that he has both constitutional and prudential standing – that it, that the outcome of the claim dispute is likely to affect an economic interest of the debtor. Constitutional standing "requires an injury in fact, which is caused by or fairly traceable to some conduct or some statutory prohibition, and which the requested relief will likely redress." *In re Veal*, 449 B.R. 542, 2011 WL 2652328 at *4 (9th Cir. B.A.P. 2011).; *In re Escobar*, 457 B.R. 229, 237 (Bankr. E.D.N.Y. 2011). Prudential standing "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Escobar*, 457 B.R. at 238 (citing *Veal*, 449 B.R. 542, 2011 WL 2652328 at *5) (quoting *Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269, 289 (2008)).

As this is a chapter 7 case, to have legal standing, Debtor would have to show that he is likely to receive a distribution from the estate and that the determination of the Nebraska claim will affect his distribution. *See In re Tatro*, 2015 Bankr. LEXIS 1648 at *21-22 (Bankr. W.D.N.Y. 2015); *see In re Chaitan*, 517 B.R. 419, 426 (Bankr. E.D.N.Y. 2014); *see also In re Manshul Constr. Corp.*, 223 B.R. 428, 430 (Bankr. S.D.N.Y. 1998). Here, Debtor has not shown that there is any prospect that this estate will have enough funds to pay all administrative, priority, secured and unsecured claims and, given this Court's administration of this case, there is no plausible

prospect of a distribution to Debtor. In fact, it is highly unlikely that there will be a distribution to general unsecured creditors.

Further, neither party has filed an adversary proceeding seeking a determination that the Loans are nondischargeable. While Debtor would have standing to challenge whether Nebraska holds a nondischargeable debt arising from the Loans, no such proceeding has been commenced.

Finally, neither side has adequately addressed whether the notes underlying the Loans need to be endorsed to be enforceable by Nebraska, or whether Nebraska's status as a guarantor requires a different analysis than this Court undertook in *Escobar*, or Judge Glenn of the SDNY Bankruptcy Court undertook in *In re Benyamin*, 587 B.R. 243 (Bankr. S.D.N.Y. 2018). *See* EDNY LBR Rule 9013-1, Motion Practice (requiring briefing on legal issue relevant to issues presented to the court).[10]

---

[10] EDNY LBR 9013-1:
(a) Rule or Statutory Basis.
A motion shall be in writing, unless made during a hearing, and shall specify the rules and statutory provisions upon which it is based and the legal authorities that support the requested relief, either in the motion or in a separate memorandum of law, and the factual grounds for relief. Failure to provide this information may be grounds to strike the motion from the calendar or deny the motion.

(b) Responsive Papers.
A response to a written motion shall be in writing and shall state the factual grounds upon which relief is opposed, and the legal authorities that support the respondent's position, either in the response or in a separate memorandum of law. Failure to provide this information may be grounds to strike the response or to grant the motion by default.

*Conclusion*

      For the reasons explained above, the Debtor's Objection to the Nebraska POC is denied.



**Dated: November 4, 2019**                            _____
      **Central Islip, New York**                         **Alan S. Trust**
                                                                           **United States Bankruptcy Judge**